43 So.3d 1080 (2010)
SUCCESSION OF Lorena P. CALDARERA, et al.
v.
Reginald ZENO, et al.
No. 2009-CA-1397.
Court of Appeal of Louisiana, Fourth Circuit.
July 16, 2010.
*1083 Joseph A. Barreca, and Charles E. Mchale, Jr., New Orleans, LA, for Plaintiff/Appellee, Succession of Lorena P. Caldarera, et al.
James E. Uschold, James E. Uschold, PLC, New Orleans, LA, for Appellant, Side by Side Redevelopment, Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendant-appellant, Side by Side Redevelopment, Inc. ("SBS"), appeals a judgment in favor of plaintiffs-appellees, the Succession of Lorena P. Caldarera, et. al[1], (hereinafter "the Caldereras") ordering the redemption of a tax sale to SBS; ordering the plaintiffs to pay SBS he taxes for the years 1998, 1999, 2001, and 2002, together with a five percent penalty and one per cent interest per month from November 10, 2003; enjoining SBS from exercising ownership rights to the property; and condemning SBS to pay all costs.
The plaintiffs filed a motion to dismiss the appeal based on the contention that SBS acquiesced in the judgment of the trial court "by accepting the redemption payment of tax, penalty and interest for the redemption as declared in the judgment, thereby making the matter a moot question." Another panel of this Court denied the motion to dismiss on February 4, 2010.
The plaintiffs also filed an answer to the appeal asking to have the tax sale declared to be an absolute nullity for lack of due process notice; contending that the trial court erred in awarding taxes for the years 1998 and 1999 because the taxes for those years had prescribed; and asking for an award of costs in the trial court and in this Court.
For the reasons hereinafter set forth, we affirm the judgment of the trial court.
SBS purchased property belonging to the Caldareras, located at 2231 Milan Street at tax sale on November 10, 2003. The Tax Sale Deed was recorded on March 3, 2004. After the tax sale deed was issued, SBS noticed that the property description said 2237 Milan Street, which is next door to 2231 Milan, and was also owned by the Caldareras. Coincidentally, the 2237 Milan Street property was also for sale at the tax sale, and was a property that SBS also bid on. As the tax sale deed said 2237 Milan, SBS believed that the deed was correct and that its original belief that it had purchased 2231 Milan was in error.
The first issue to be addressed by this Court is the question of nullity raised in the plaintiffs' Answer to the Appeal because that potentially could be dispositive of the case. By ordering the redemption pursuant to the reasons quoted above, the trial court implicitly found that notice was valid[2]. Therefore, we shall proceed on the basis that the trial court implicitly found as a matter of fact that notice of the tax sale was given. Such implicit findings of fact are subject to the manifest error standard of review. Alexis *1084 v. Alton Ochsner Foundation Hosp., 07-0355, p. 6 (La.App. 4 Cir. 8/29/07), 966 So.2d 673, 677; Delaney v. Humana Hosp., 01-0389, p. 7-8 (La.App. 4 Cir. 10/16/02), 830 So.2d 1072, 1078; Ruby v. Jaeger, 99-1235, p. 4 (La.App. 4 Cir. 3/22/00), 759 So.2d 905, 907.
Due process does not require that a property owner receive actual notice before the government may seize his property. Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). All that is required is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Mitchell v. Valteau, 09-1095 (La.App. 4 Cir. 1/27/10), 30 So.3d 1108, n. 5, citing Mennonite Board of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
Although the plaintiffs offered testimony that they received no notice of the tax sale, there was evidence in the record that the owner who resided at the address to which notices were sent was aged, incoherent, and disabled and had been known to take mail up to her room without the knowledge of her caretakers. From this a reasonable fact finder could deduce that notice was received, but never dealt with properly.
Dr. W. Wesley Allen testified on behalf of SBS that he saw the tax sale notice in the newspaper and that he knocked on the door of 2231 Milan and was told by the tenant that the owners lived across the street. He testified that when he went across the street he met with two women whom he told about the tax sale, who informed him that they were already aware of it.
Plaintiffs' witness, Lorena Hunsinger, said she thought she learned of it in the newspaper, from which we must necessarily infer that she received notice by publication. However, the Supreme Court of Louisiana noted in Lewis v. Succession of Johnson, 05-1192 (La.4/4/06), 925 So.2d 1172, that:
We have traditionally found that advertisements of tax sales provide insufficient notice, except in the case of unknown owners whose identities are not reasonably ascertainable.
Id., 05-1192, at p. 11, 925 So.2d at 1179.
In Mennonite, supra, the United States Supreme Court concluded that notice by publication and posting was "designed primarily to attract prospective purchasers to the tax sale" and, consequently, is "unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices." Id., 462 U.S. at 799, 103 S.Ct. 2706, 77 L.Ed.2d 180. As a result, the Court concluded that "notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Id., 462 U.S. at 800, 103 S.Ct. 2706, 77 L.Ed.2d 180. Thus, the notice of the tax delinquency by publication of an advertisement for an upcoming tax sale, alone, does not pass constitutional muster if the owners of the property can be identified or are easily discovered. Lewis, supra, 05-1192, at p. 12, 925 So.2d at 1179.
Plaintiffs argue that there is no evidence in the record that the 20-day notice required by La. R.S. 47:2180[3] was *1085 served on the plaintiffs. SBS offered the tax sale deed into evidence. A tax sale deed by a tax collector is prima facie evidence of a valid sale. La. Const. Art. VII, § 25 A; Lewis v. Succession of Johnson, 05-1192 (La.4/4/06), 925 So.2d 1172, 1177. Tax sales are presumed valid. Id. Therefore, the burden is not on SBS to produce evidence to prove notice.
The plaintiffs also argue that La. R.S. 47:2180 B[4] requires the tax collector to file a proces verbal attesting to the manner in which notice was given to the tax debtor. The plaintiffs further contend that no such proces verbal was filed. However, we find that the proces verbal recitation incorporated into the tax sale deed in the instant case is sufficient to satisfy this requirement and that the proces verbal does not have to be in a separate, stand alone document.
The proces verbal recitation in the tax sale deed refers only to Mrs. Lorena P. Caldarera. The plaintiffs offered evidence in the form of the Judgment of Possession dated February 1, 1991, in the Succession of Charles V. Caldarera that the Succession of Mrs. Lorena P. Caldarera owned a 5/6 interest in the property and that Virginia Caldarera Hunsinger owned the remaining 1/6 interest in the property. However, there is no evidence in the record that this Judgment of Possession was ever recorded in the Conveyance records of the Parish of Orleans. Therefore, we find that the holding in Lewis v. Succession of Johnson, 05-1192 (La.4/4/06), 925 So.2d 1172, 1179, that notice to all co-owners is required, is not relevant to the instant case. The plaintiffs have offered no evidence that the tax collector had any reason to be on notice of this judgment of possession. La. C.C. art. 1839.
The proces verbal in the tax deed recites that the tax collector "mailed to the said MRS. LORENA P. CALDARERA [emphasis original] by certified letter a notice in conformity with the Laws of the State..." The plaintiffs have offered no evidence that Mrs. Caldarera was not the record owner as shown on the conveyance records of the Parish of Orleans at the time of the tax sale. Under the circumstances we find that the proces verbal recitation in the tax sale deed, coupled with the other factors discussed above, is sufficient to satisfy due process requirements.
SBS contends that the three-year period for redemption is peremptive and not prescriptive, and, therefore, the trial court erred in basing its decision on the plaintiffs' contra non valentem argument that they were prevented from redeeming the property in a timely manner because of SBS's demands for fees and costs (rents) to which it was not entitled. Tax sales are subject to a three-year redemption period which runs from the date the tax sale deed is recorded. La. Const. Art. 7, § 25(B). The redemption period is peremptive. Harris v. Estate of Fuller, 532 So.2d 1367, 1369 (La.1988). In Harris the Louisiana Supreme Court noted that because the three-year period is peremptive, it could not be suspended or interrupted. Similarly La. C.C. art. 3461 states that: "Peremption may not be renounced, interrupted, or suspended."
SBS's primary contention on appeal is that the trial court erred in ordering the redemption because the plaintiffs' failed to exercise their right of redemption within the three-year peremptive period. *1086 The trial court gave the following reasons for judgment:
The facts of this case are not in dispute so they will not be recited here. In the end, this Court concludes that Caldarera [sic] timely filed for redemption. They were not able to redeem the property because Side by Side demanded payment of items to which this Court concludes they are not entitled. Therefore, this Court is ordering a redemption.
The plaintiffs' lawsuit did not initiate these proceedings until they filed their petition for mandamus on March 21, 2007, to compel the issuance of a certificate of redemption, naming as defendants, SBS and Reginald Zeno, the Director of the Department of Finance, Bureau of the Treasury of the City of New Orleans. Therefore, based on the face of the original petition in these proceedings alone we would be compelled to conclude that the plaintiffs' claim for redemption perempted, unless the plaintiffs could establish the existence of some event that occurred prior to March 3, 2007, that would be tantamount to redemptionand the burden, under these circumstances, would be on the plaintiffs to do so. In placing this burden upon the plaintiffs, we adopt the very cogent reasoning of our brethren of the Third Circuit in Dauterive Contractors, Inc. v. Landry And Watkins, 01-1112 (La. App. 3 Cir. 3/12/02), 811 So.2d 1242:
[W]hen the action is prescribed on the face of the petition, the burden shifts to the plaintiff. He must prove that the claim has not prescribed by showing either suspension, interruption, or renunciation prescription. Bourque v. Hoychick, 97-627 (La.App. 3 Cir. 11/19/97); 704 So.2d 815; Taussig [v. Leithead, 96-960 (La.App. 3 Cir. 2/19/97),] 689 So.2d 680; Seaux [v. Doucet, 96-854 (La.App. 3 Cir. 12/11/96); 685 So.2d 537;]; Lima [v. Schmidt], 595 So.2d 624 (La.1992).
We recognize that these jurisprudential rules apply to prescription. However, both the running of prescription and the running of peremption have the effect of terminating the litigation. Though different in their operation, the relatedness of the two theories justifies application of prescription's burden-shifting principles enunciated in the jurisprudence to peremption. See Academy Mortg. Co., L.L.C., v. Juarez, 98-963 (La.App. 5 Cir. 6/1/99); 740 So.2d 708, [713] ("There is nothing in the record to rebut the presumption that the cause of action perempted on its face."). Therefore, when the plaintiff's petition is perempted on its face, the burden shifts to the plaintiff to show why the claim has not perempted.
Id., 01-1112, pp. 15-16, 811 So.2d at 1253.
The record contains two possibilities in this regard: (1) The contention of the plaintiffs, with which the trial judge agreed, that SBS made unreasonable demands upon the plaintiffs for costs and rents which impeded the plaintiffs' timely redemption of the property; and (2) the testimony of Mr. Joseph Barreca, alluded to by both the plaintiffs and SBS, to the effect that he commenced efforts to redeem the property on a timely basis, but he was not able to conclude those efforts within the three-year period because of the confusion in the tax sale deed property description, a confusion that could not be attributed to the plaintiffs. Both of these arguments partake of the nature of contra non valentem, and SBS is correct in arguing that contra non valentem is not normally a valid defense to preemption.
However, under the very particular facts and equities of the instant case, we find that the plaintiffs commenced the redemption process in a timely manner prior to the expiration of the three-year peremptive period for redemption.
*1087 Mr. Barreca, the attorney who was handling the redemption for the plaintiffs, testified that between November 15, 2006 and January of 2007:
I met several times with people or called people ... and I think I spoke with the City Attorney Robert Ellis.
He testified that he prepared a La. R.S. 47:2222(C) redemption certificate and informed the City that he "had the money to give them a check" but needed to make sure of the right amount. He went on to explain that:
The whole problem with the redemption was, is that we had a Tax Sale Deed with the tax number for one property, and the property description for the other property, and that's what I was trying to do; get that corrected. I wasn't going to go file suit until I got that corrected.
And it wasn't till afterwards I decided, well, the only thing I can do now is file a Mandamus to have them correct it, and we tried that, and that's where we are today.
SBS does not dispute this testimony, and quotes it without challenge in its original brief on appeal. We find that the most analogous and persuasive jurisprudential authority is Becnel v. Woodland, 628 So.2d 89 (La.App. 5 Cir.1993). In Becnel, the tax debtor went to the town hall prepared to pay his taxes shortly prior to the expiration of the redemption period and made an oral request of a city employee to do so. He was told by the employee that she would get back to him with the amount when it was more convenient. By the time she did so, the redemption period had expired. The Becnel court held that the oral initiation of the redemption process within the three-year period was sufficient in spite of the fact that the process was not completed until after the three-year period had expired. The Becnel court cited this Court's decision in Harris v. Guardian Funds, Inc., 425 So.2d 1322 (La.App. 4 Cir.1983), where we concluded that while the redemption process must be initiated within three years, the process need not be completed within that period of time.
In reaching this conclusion, the Becnel court relied on the principle that Louisiana law favors the redemption of property sold for taxes, citing this Court's opinion in Fleckinger v. Smith, 319 So.2d 881, 885 (La.App. 4 Cir.1975). This Court remarked in Fleckinger that, "equitable considerations exist in favor of the tax debtor who attempts to redeem his property." Id.
If ever there was a case abounding in equitable considerations, it is the instant case, where the tax sale deed had the tax number for one property and the property description for another, through no fault of the tax debtor. We find that the equitable considerations espoused by the Becnel-Harris-Fleckinger line of cases to be particularly applicable to the unique facts of the instant case where the records of the City were not in order, thereby frustrating the attempts of the tax sale debtor to effect a timely redemption of the property on the one hand, while at the same time the tax sale purchaser was making questionable demands for fees and rents on the other hand.[5]
For the foregoing reasons, we find no error in the finding of the trial court that the plaintiffs' attempts to redeem the *1088 property were timely and adequate to defeat the three-year peremption.
The plaintiffs also contend in their Answer to the Appeal that the tax sale is defective because no attempt was made at the tax sale to attempt to see if the tax debt could be satisfied with the sale of an undivided interest in the property of less than 100%., citing La. Const. Art. VII, § 25 A and La. R.S. 47:2184[6]. However, we are guided by the following statement in Olson v. Rapides Parish Sheriff & Tax Assessor, 08-1288 (La.App. 3 Cir. 4/1/09), 7 So.3d 797, writ denied, 09-0982 (La.10/2/09), 18 So.3d 117, reconsideration not considered, 09-0982 (La.11/20/09), 25 So.3d 809:
[T]he statute does not prohibit the tax collector from commencing the sale by offering a one hundred percent interest in the property for the taxes due and subsequently accepting any competing bids for lesser percentages of fractional ownership.
Id., 08-1288, p. 6, 7 So.2d at 801.
Moreover, we find no evidence in the record of a tax sale bidder willing to bid on an undivided interest in the property of less than 100%, who was denied the right to do so. Therefore, we find that the tax sale is not defective on this account.
In ordering the redemption, the trial court ordered the plaintiffs to pay SBS the taxes for the years 1998, 1999, 2001, and 2002, plus five per cent (5%) penalty, and one percent (1%) interest per month from November 10, 2003. The plaintiffs do not contest the 5% penalty, nor do they contest the 1% interest award to SBS. However, in their answer to the appeal the plaintiffs contend that the taxes for the years 1998 and 1999 had prescribed and ask this Court to reverse that portion of the trial court judgment.
We find that there was no error in the judgment of the trial court regarding this issue. City taxes are imprescriptible, notwithstanding the fact that the tax privileges securing them may have prescribed. People's Homestead Ass'n v. Garland, 107 La. 476, 477-478, 31 So. 892 (La.1902). The plaintiffs agree that prescription applies only to tax liens and privileges and not to the taxes themselves, citing Bank of White Castle v. Baker, 174 La. 17, 139 So. 648 (1932), and Miramon v. City of New Orleans, 52 La.Ann. 1623, 28 So. 107 (1900). Therefore, as long as the property remains in the hands of the tax debtor and has not passed into the hands of a third party, as it had not in the case before us, the taxes are enforceable. Rousset v. City of New Orleans, 110 La. 1040, 1042, 35 So. 281 (La.1903); People's Homestead Ass'n, supra. The plaintiffs concede that the taxes themselves are imprescriptible and the cases they cite all deal with the prescription of the tax privileges, not the taxes themselves.
Finally, we come to the question of SBS's claim to the rents collected by the plaintiffs. First, we note that it is uncontested that SBS never went into actual possession of the property in question. The plaintiffs argue that this negates SBS's claim for rents. The fact that SBS never went into possession of the property is important because most of the cases cited by SBS involve redemption statutes over one hundred years old which specifically conferred upon the tax sale purchaser an entitlement to *1089 rents.[7] However, such statutes have long since been repealed, and the fact that more recent legislation no longer contains any similar language arguably suggests a considered decision that the entitlement to rents is no longer considered automatic. SBS cites the more recent case of Burns v. Harris, 41,881 (La.App. 2 Cir. 5/23/07), 957 So.2d 921. The tax purchaser in Burns obtained a writ of possession and took actual possession of the property in the tax deed. However, the trial court decision ordered the payment of the rents not from the date of recordation of the tax deed, but from the date of possession.
Without attempting to establish a general principle regarding the rights to rents as between the tax debtor and the tax sale purchaser, in once again considering the unique facts of the instance case, we find that the trial court did not err when it did not award rents to SBS. It is uncontested that SBS never went into possession of the property at 2231 Milan Street as it was under the mistaken belief that it had bid in the property at 2237 Milan Street instead, a belief arising through no fault of the plaintiffs. Therefore, the only reasonable factual conclusion that can be drawn from the record is that SBS never intended to collect rents from 2231 Milan Street. Because of the mistake in the tax deed and the erroneous conclusion drawn from that mistake by SBS, cases involving a tax sale purchaser's claims for rents from property properly described are not persuasive. We find no cases with analogous facts in this regard.
Additionally, we cannot see how SBS could be said to be prejudiced by being denied the rents. There is no evidence that SBS put any effort or expense into collecting rents; nor will SBS be inconvenienced in any manner by having to return rents it had collected and upon which SBS may have come to rely, as SBS never collected any such rents. The plaintiffs remained in possession of the property subsequent to the tax sale, intended to collect the rents therefrom, and did in fact collect the rents in good faith. We find that they are entitled to keep the rents collected.
For the foregoing reasons, the judgment of the trial court is affirmed. Because of the unusual facts and issues in the case, we decree that each party is to bear its own costs in this Court.
AFFIRMED.
BELSOME, J., concurs in part and dissents in part.
BELSOME, J., concurs in part and dissents in part.
I respectfully dissent from the assignment of each party with its own costs and would instead affirm the trial court's judgment assessing all costs to SBS. In all other respects, I concur.
NOTES
[1] The Succession of Lorena P. Caldarera, through its co-administrators, Lorena A. Hunsinger and Gerard B. Hunsinger; and Lorena A. Hunsinger and Gerard B. Hunsinger, individually, as the legal heirs of their mother, Virginia Caldera Hunsinger.
[2] In the absence of valid notice there would have been no valid tax sale and in the absence of a valid tax sale there would have been no reason to order a redemption.
[3] In effect at all times relevant to these proceedings, but repealed by Acts 2008, No. 819, § 2, effective Jan 1, 2009.
[4] In effect at all times relevant to these proceedings, but repealed by Acts 2008, No. 819, § 2, effective Jan 1, 2009.
[5] For example, see Builder's Lumber and Supply Company v. Jordan Lands, Inc., 228 So.2d 359 (La.App. 3 Cir.1970), where the court, in denying a claim by the tax sale purchaser for attorney's fees stated that the "`costs' referred to [in La. R.S. 47:2221] are the costs of the tax sale for notices and advertisements."
[6] In effect at all times relevant to these proceedings, but repealed by Acts 2008, No. 819, § 2, effective Jan 1, 2009.
[7] For example, see Moore v. Boagni, 111 La. 490, 35 So. 716 (1903), which relied on Act 88 of 1888. See also Flanagan v. Land Development Co. of Louisiana, 83 So. 39, 41-42, 145 La. 843, 850-851 (La.1919), and Wm. Mayer v. Mrs. M. Melancon, Orleans No. 7950, 3 Pelt. 581 (La.App.Orleans), 1920 WL 906, which refer to Acts No. 170 of 1898 allowing rents and revenues upon redemption.